**UNITED STATES v. FERRIS et al.**
(two cases).

**SAME v. STONE.**

District Court, N. D. California. S. D.
April 20, 1927.

Nos. 18277, 18523, 18524.

1. **International law ☞7—Only authority for search and seizure on high seas is international law.**

To whatever extent right of search and seizure on high seas exists, it is by virtue of international law.

2. **Treaties ☞13—Members of crew of steamer of Panaman registry, seized at sea 270 miles from United States territory, will not be prosecuted, in view of treaty with Panama (Treaty of 1924; Prohibition and Tariff Acts).**

Courts will not prosecute defendants, seized at sea 270 miles from territory of United States, and forcibly brought within jurisdiction of court, for conspiracy to violate Prohibition and Tariff Acts, where defendants' ship was of Panaman registry, in view of treaty of 1924 between United States and Panama (43 Stat. 1875), permitting search and seizure within hour's sailing from coast.

3. **Treaties ☞13—Treaties shall be scrupulously observed, held inviolate, and in good faith precisely performed.**

Contracts and law represented by treaties shall be scrupulously observed, held inviolate, and in good faith precisely performed, especially in view of Constitution, declaring them to be "the supreme law of the land."

Joe Ferris and others and Stuart S. Stone, members of the crew of the steamer Federalship, were accused of conspiracy to violate the Prohibition and Tariff Acts. On pleas to the jurisdiction of the court over their persons. Sustained.

George J. Hatfield, U. S. Atty., and Eugene D. Bennett, Asst. U. S. Atty., both of San Francisco, Cal.

Harold C. Faulkner and James B. O'Con-

nor, both of San Francisco, Cal., for defendants.

BOURQUIN, District Judge. These indictments allege conspiracies to violate the Prohibition and Tariff Acts. Several defendants interpose pleas to the jurisdiction of the court, viz.: That March 1, 1927, they were of the crew of the steamer Federalship, then with their persons seized by United States Coast Guards some 270 miles off the west coast territory of the United States; that forcibly and against their will they were brought within the territory of the jurisdiction of the court and held to answer to these indictments; and that said steamer is of English ownership and Panaman registry.

Their contention is that the seizure is illegal, in that it is contrary to and prohibited by the treaty of 1924 between the United States and Panama (43 Stat. 1875), and that because thereof there can be no jurisdiction of their persons against their wills. This treaty is like to that between this country and England, involved in the Quadra Case (Ford v. United States, 47 S. Ct. 531, 71 L. Ed. ——). Amongst other things it provides that Panama "will not object" to search and seizure by the United States of vessels under the Panama flag and engaged in offenses against laws of the United States in respect to importation of alcoholic beverages, but that "the rights conferred by this article shall not be exercised at a greater distance" than one hour's sailing from the coast of the United States.

[1] In the matter of search and seizure upon the high seas, to whatever extent the right exists, it is by virtue of international law, and is of vague, indefinite, and conflicting recognition. To settle the conflict, and to define the limit of the right in so far as illicit importation of alcoholic beverages is concerned, this and like treaties were negotiated. They modify and themselves are international law between their signatories, by the Constitution are declared to be of "the supreme law of the land," and in so far as they are self-executing and relate to private rights are to be given effect by the courts to the extent that they are capable of judicial enforcement. This treaty is the only law authorizing seizure on the high seas of Panaman vessels and crews offending as aforesaid, and it authorizes seizure only within one hour's sailing of the coast.

[2, 3] In and by it the right is "conferred," Panama concedes it, in consideration thereof the United States accepts and agrees to it as therein limited, abandons all claim of right

exceeding it, and promises to comply with it. Hence, as the instant seizure was far outside the limit, it is sheer aggression and trespass (like those which contributed to the War of 1812), contrary to the treaty, not to be sanctioned by any court, and cannot be the basis of any proceeding adverse to defendants. The prosecution contends, however, that courts will try those before it, regardless of the methods employed to bring them there. There are many cases generally so holding, but none of authority wherein a treaty or other federal law was violated, as in the case at bar. That presents a very different aspect and case. "A decent respect for the opinions of mankind," national honor, harmonious relations between nations, and avoidance of war, require that the contracts and law represented by treaties shall be scrupulously observed, held inviolate, and in good faith precisely performed—require that treaties shall not be reduced to mere "scraps of paper."

Accordingly the Supreme Court holds that a defendant, before a court upon extradition for one offense, cannot be therein tried for any other offense; but, so far as the latter is concerned, he must be permitted to return to the country from whence he was brought; that his plea to the jurisdiction must be sustained. U. S. v. Rauscher, 119 U. S. 429, 7 S. Ct. 234, 30 L. Ed. 425. And this is in no wise modified by Ker v. Illinois, 119 U. S. 444, 7 S. Ct. 225, 30 L. Ed. 421, for in the latter was no violation of treaty or other federal law. It seems clear that, if one legally before the court cannot be tried because therein a treaty is violated, for greater reason one illegally before the court, in violation of a treaty, likewise cannot be subjected to trial. Equally in both cases is there absence of jurisdiction.

In the Quadra Case (Ford v. United States) the Supreme Court indicates that this is the law; for in answer to the government's contention, like that of the prosecution here, it says the Ker Case does not apply, in that therein the seizure of Ker "violated neither * * * a federal law, nor a treaty of the United States. * * * Here a treaty of the United States is directly involved, and the question is quite different." Thereupon it notes that the Quadra defendants, unlike defendants here, interposed no plea to the jurisdiction, and "the effect * * * was to waive the question of jurisdiction of the persons of defendants."

It further observes that defendants' "immunity on the high seas from seizure or being taken into port came from the immunity of the vessel"; that, coming within one hour's

sailing of the coast, the vessel lost its immunity, and defendants theirs with it; and that, in consequence, they, being within the court's jurisdiction, were legally tried—which is but to say that, beyond one hour's sailing, vessel and crew were immune against seizure.

Defendants' pleas to the jurisdiction of the court over their persons are sustained.