## THE WHICH ONE.

District Court, E. D. New York.

Feb. 1, 1933.

Howard W. Ameli, U. S. Atty., of Brooklyn, N. Y. (Alfred C. McKenzie, Asst. U. S. Atty., of Brooklyn, N. Y., of counsel), for the United States.

Louis Halle, of New York City (Milton R. Kroopf, of New York City, of counsel), for claimant.

GALSTON, District Judge.

The libelant seeks forfeiture of the British vessel Which One for violations of the Tariff Act of 1930 (19 USCA § 1001 et seq.).

There are four causes of action set forth. The first relates to the importation into the United States of 62 barrels of scotch malt, part of a cargo of the vessel not included or described in the manifest of the vessel, and alleges that the master in charge of the vessel did not produce the manifest as required, in violation of section 584 of the Tariff Act of 1930 (title 19 U. S. C. § 1584 [19 USCA § 1584]).

The second cause of action alleges the violation of section 584 of the Tariff Act of 1930 (title 19, U. S. C. § 1584 [19 USCA § 1584]) and of section 594 of the same Act (title 19 U. S. C. § 1594 [19 USCA § 1594]).

The third cause of action alleges that the British oil screw Which One arrived within the limits of the Tenth collection district of the port of New York, within the jurisdiction of this court, from St. Johns, Newfoundland, and attempted to depart without just cause and without making a report as required by the Tariff Act, § 585 (title 19 U. S. C. § 1585 [19 USCA § 1585]).

The last cause of action, the fourth, sets forth that those in charge of the vessel fraudulently and knowingly imported the liquor in question and brought it into the United States, contrary to law, in violation of the provisions of section 593 (b) and section 594 of the Tariff Act of 1930 (title 19 U. S. C. §§ 1593 (b) and 1594).

The Dover Shipping Company, Limited, by Chesley Anderson, master of the vessel, filed a general denial to the libel.

No proof is offered by the claimant, for, as is not unusual in cases of this kind, reliance is had upon the inadequacy of the libelant's proofs.

The critical questions involved are the speed of the Which One and her position when the "hot pursuit" began.

Oliver Rahle, boatswain on the Cahoone, Coast Guard cutter, ventured a guess that the distance traversed by the Cahoone in the period from 7:10 p. m., when the pursuit started, until 9:15, when the capture was made, was from 10 to 15 miles, and that the cutter traveled at various speeds, from 3 to 11 knots per hour. Likewise he said that it appeared to him that, at the time that the Cahoone was making 11 knots per hour, the Which One was making better speed.

Dwight H. Dexter, another officer of the Cahoone, testifying as to the course of the Which One, said that, at the moment when she was cited, the Which One was headed approximately southeast and immediately started her motors and headed in a southerly direction.

"The 'Which One' was almost consistently on a due southerly course, the course that I believe is given in the log, until the time we received our radio bearing. She commenced to change the course and maneuver, making a small turn to the right and a small turn to the left, and each time she did this we were able to gain on her by cutting the corners, and each time she did this she found it was to her disadvantage, and she continued on a general southeasterly course until we overtook her."

In a measure corroborating Rahle, Dexter said that during the chase the Cahoone traveled most of the time at 11 knots or a little better, which was her maximum speed. However, the log of the vessel contradicts both of

these officers, for there is there disclosed the recital that at 7 o'clock the Cahoone was making 5 knots; at 8 o'clock 10 knots, and at 9 o'clock 8 knots.

Since the decision by the United States Supreme Court in Frank Cook v. United States, 53 S. Ct. 305, 77 L. Ed. ——, opinion filed January 23, 1933, relating to the British motor screw Mazel Tov, it is now settled that the legality of this seizure must be determined by the provisions of the Treaty of 1924 between Great Britain and the United States (43 Stat. 1761), and that the 1930 Tariff Act (title 19 U. S. C. § 1581), which fixes a 12-mile zone for the boarding of vessels for discovery of customs laws violations, is limited by the 1924 treaty so far as search and seizure of British vessels are concerned.

From the foregoing recital of facts, it must appear that the proof of the speed of the Which One is very meager indeed. The burden is, of course, upon the government to show that, when the hot pursuit began, the Which One was within an hour of her own sailing distance from the shore. It is impossible from the record to determine with any exactness how far from shore the Which One was at the time she was first cited. Indeed, there is much doubt as to the exactness of the Cahoone's position at that moment. But, if one accepts the testimony of the government witnesses as free from doubt, the best that can be claimed is that the Cahoone was 9½ miles from shore. On the assumption that that distance is satisfactorily proved, though the matter is not at all free from doubt,[1] then I fail to find from the foregoing that the Which One was capable of covering that distance within the hour.

At the conclusion of the trial, I thought that perhaps a prima facie case had been made out, but, on reading the record critically, I think the government has failed, by convincing evidence, to establish the rate of speed of the Which One. During the pursuit, as evidenced by the log of the Cahoone, the greatest speed attained by the Cahoone was at 8 o'clock, when she went at 10 knots per hour. When the pursuit began, the Which One was a quarter of a mile distant so that distance at least had to be made up. If both vessels then had steered on a straight course, the Cahoone would have covered more ground within the same time and hence would have traveled at a greater speed. But they did not travel on a straight course. Maneuvers were made by both vessels, so that, without guessing, one cannot tell the distances which either traveled. Indeed, the testimony of Rahle that during the pursuit the Cahoone traveled 10 to 15 miles, thus leaving a 5-mile margin, forces the conclusion that the distance traveled in the given time by either vessel would be a matter of mere speculation. If neither that distance is known nor any other distance for a given time of the chase, then obviously the rate of speed cannot be determined; and, without that determination, the government's case must fail.

Accordingly, the libel will be dismissed.

If this opinion is not in sufficient compliance with the rule requiring findings of fact and conclusions of law, submit findings of fact and conclusions of law in accordance therewith.

[1] Rahle testified that, up to the time that the course was reversed at 6:45 p. m., the Cahoone was not more than 11 or 11½ miles from shore. It is more likely, as shown on Exhibit A, that that distance was nearer 13.4 miles. Between 6:45 p. m. and 7:10 p. m., the Cahoone on the reversed course traveled about 2½ miles, which would bring her distance from shore on that course at the time that she observed the Which One in excess of 11 miles.