**UNITED STATES of America, Plaintiff,**

v.

**Charles W. DEATON, Defendant.**

No. CR 76–182.

United States District Court,
N. D. Ohio, E. D.

March 13, 1978.

Douglas P. Roller, Washington, D. C., and Kenneth A. Bravo, Pittsburgh, Pa., for plaintiff.

Edward F. Marek, Cleveland, Ohio, for defendant.

## MEMORANDUM OPINION AND ORDER

LAMBROS, District Judge.

Defendant Charles W. Deaton, a.k.a. C. W. Deaton ("Deaton"), was charged in a six-count indictment on May 28, 1976, with committing the following crimes in the Northern District of Ohio and elsewhere: conspiracy to misapply funds of the Northern Ohio Bank of Cleveland (Count I); willful misapplication of said bank funds (Count II); making of a materially false statement for the purpose of influencing Northern Ohio Bank's action on a mortgage application (Count III); transmission in interstate commerce of certain communications as part of a scheme to defraud the Northern Ohio Bank (Count IV); a second such transmission at a later date (Count V); and willful transportation across state lines of funds obtained by fraud (Count VI). Deaton had previously been indicted on May 5, 1976, in the Northern District of

Texas on sixteen counts including conspiracy, mail fraud and the interstate transportation of securities taken by fraud. On May 11, 1976, extradition proceedings were initiated to obtain jurisdiction over Deaton, who at that time was residing in the Federal Republic of Germany ("West Germany"). The Foreign Office of West Germany granted extradition of Deaton on December 7, 1976, and he stood trial in Texas on that indictment. Deaton was convicted on all sixteen counts, received two sets of fifty-year sentences on the substantive counts and five years for conspiracy, and had his conviction affirmed by the Court of Appeals for the Fifth Circuit. *See United States v. Deaton,* 563 F.2d 777 (Summary Calendar) (1977).

Deaton has now moved in this Court to be discharged on the grounds that the Court lacks personal jurisdiction over him because his extradition was pursuant to an invalid treaty. Alternatively, Deaton asks for dismissal of Counts I, III, IV, and V of the present indictment on the theory that recognized principles of international law prohibit his trial for crimes not specified in the extradition treaty and/or not made criminal under the laws of both West Germany and the United States. Because the Court decides both extradition issues against Deaton, those two motions will be denied. Deaton has also moved for a bill of particulars and for certain discovery. The Court denies his motion for a bill of particulars because it finds the indictment is sufficiently specific without such particularization. The Court also denies Deaton's discovery requests, except to the extent that certain disclosures shall be made by the Government at trial.

## I. EXTRADITION

In his appeal from the Texas convictions, Deaton first raised the issue of improper extradition in regards to the conspiracy count in that indictment. Because the five-year term on that conviction was to run concurrently with the fifty-year sentences on the substantive counts, the Fifth Circuit found no need to reach the extradition

questions. *See United States v. Deaton, supra.* Deaton has made the same objections here to the Court's jurisdiction on the conspiracy count, and has amplified his objections to include other substantive counts as well. Because no other court has considered the issues raised by Deaton's extradition, this Court is now obliged to do so.

In 1930 an extradition treaty was entered into between the United States and the Weimar Republic of Germany. No other extradition treaty has ever been made between Germany and this country. It is Deaton's principal contention as regards the Court's personal jurisdiction that the 1930 treaty was abrogated by hostilities during World War II, that it was made between the United States and a nation which no longer exists, and that the treaty, although noticed in 1955 and 1956 by West Germany and this country, has never received subsequent Congressional ratification. Thus Deaton argues that he was improperly extradited under an invalid treaty, and this Court consequently lacks personal jurisdiction over him. *Cf. Valentine v. United States ex rel. Neidecker,* 299 U.S. 5, 57 S.Ct. 100, 81 L.Ed. 5 (1936); 18 U.S.C. § 3181.

The main question is whether the treaty has been abrogated by hostilities during World War II, or merely suspended during their duration. Both parties recognize that this is essentially a question of fact to be answered in accordance with the rule set out in *Argento v. Horn,* 241 F.2d 258 (6th Cir. 1957) (Stewart, J.). In *Argento,* then Circuit Judge Potter Stewart stated that the question

> can and must be decided against the background of the actual conduct of the two nations involved, acting through the political branches of their governments.

*Argento v. Horn, supra* at 262. Mr. Justice Stewart concluded in that case that, among other factors,

> the conduct of the political departments of the two nations . . ., evidencing their unqualified understanding that the extradition treaty is in full force and effect, all make it obvious that the political departments of the two governments

considered the extradition treaty not abrogated but merely suspended during hostilities.

*Id.* In fact, the *Argento* test has already been applied to the instant treaty, and the treaty has been found, upon a certification by the Secretary of State, to be fully operative. *In re Ryan,* 360 F.Supp. 270, 272 n.4(2) (E.D.N.Y. 1973).

 The Government has filed a similar certification in this case. In a statement dated June 9, 1977, Arthur W. Rovine, Assistant Legal Advisor for Treaty Affairs, certifies as follows:

> The Treaty on extradition between the United States and Germany, signed at Berlin July 12, 1930 and proclaimed by the President April 22, 1931, remains in full force and effect between the United States and the Federal Republic of Germany (West Germany). The continuation in force of this Treaty as between the United States and the Federal Republic was confirmed by an exchange of notes of January 10, 1955, April 13, 1956 and June 26, 1956, setting forth the understanding that the 1930 treaty would be applied and considered as fully operative. By these notes the Treaty was made fully operative as of January 1, 1956, and it has remained in full force and effect since that date.

Government's Response to Defendant's Motion to Discharge Defendant (Exhibit A). Upon this certification and the authorities just discussed, the Court finds that the 1930 extradition treaty between West Germany and the United States is in full force and effect. The Court also finds, upon examining certified copies of certain diplomatic notes filed here June 29, 1977, concerning the extradition of Deaton, that his arrest and removal to the United States was conducted with the proper formalities pursuant to that treaty. *See, e. g.,* Note Verbale, Federal Republic of Germany Foreign Office (No. 511–531E–382/76) (Bonn, Dec. 7, 1976). This Court thus has jurisdiction over Deaton to try him on the indictment of May 28, 1976.

Notwithstanding that this Court has personal jurisdiction over him, Deaton also contends that he cannot be tried under Counts I, III, IV and V of the indictment here because to do so would violate two recognized principles of international law: the "principle of specialty," which generally requires that persons can be extradited and tried only for crimes listed in the applicable treaty; and the principle of "dual criminality," which holds that extraditable crimes include only those which are made criminal under the laws of both parties to the treaty. Deaton cites, among others, the cases of *Factor v. Laubenheimer,* 290 U.S. 276, 54 S.Ct. 191, 78 L.Ed. 315 (1933), and *Shapiro v. Ferrandina,* 478 F.2d 894 (2d Cir. 1973), in support of his argument. He argues that conspiracy (Count I) is neither specifically listed in the treaty, *see* Motion to Discharge Defendant (Exhibit 1), nor a recognized crime in West Germany, and thus prosecution on that count is barred. He further argues that Counts III, IV and V cannot be pressed against him because the making of a false statement in a loan application or the use of interstate communications to perpetuate a fraud are also not crimes in West Germany. The Court finds, however, that it need not be overly concerned with these complex issues of international law and treaty interpretation because a broader rule is dispositive in this case.

In *Ker v. Illinois,* 119 U.S. 436, 7 S.Ct. 225, 30 L.Ed. 421 (1886), the Supreme Court first recognized the principle that a person indicted for a crime in a United States court can be forcibly brought into this country in complete disregard of an extradition treaty, and such activity does not deprive a court of jurisdiction to try that person. *See also Frisbie v. Collins,* 342 U.S. 519, 72 S.Ct. 509, 96 L.Ed. 541 (1952); *United States ex rel. Lujan v. Gengler,* 510 F.2d 62 (2d Cir.), *cert. denied,* 421 U.S. 1001, 95 S.Ct. 2400, 44 L.Ed.2d 668 (1975); *United States v. Sobell,* 244 F.2d 520 (2d Cir. 1957). Although it has now been recognized that the *Ker-Frisbie* rule must yield to the dictates of due process when the facts of the accused's abduction are particularly shocking, *see United States v. Toscanino,* 500 F.2d 267 (2d Cir. 1974), still the general rule remains that a court's manner of acquiring jurisdiction over a defendant is irrelevant as long as the accused receives due process of law in the trial on the merits of the indictment. *See Autry v. Wiley,* 440 F.2d 799 (1st Cir.), *cert. denied,* 404 U.S. 886, 92 S.Ct. 219, 30 L.Ed.2d 169 (1971).

There are, however, two limited exceptions to the *Ker-Frisbie* rule. The first is that established in *Ford v. United States,* 273 U.S. 593, 47 S.Ct. 531, 71 L.Ed. 793 (1927), and *Cook v. United States,* 288 U.S. 102, 53 S.Ct. 305, 77 L.Ed. 641 (1932), in which the Supreme Court held that when a treaty itself imposes territorial limitations on the exercise of the powers granted therein, the seizure of a defendant or other subject of the court's jurisdiction in disregard of those limitations is invalid. *Ford* and *Cook* have primarily been applied in maritime situations involving seizure of ships and cargoes; the cases do not establish a general principle that *all* jurisdiction and/or custody which may have been obtained in technical violation of an extradition treaty is improper and grounds for dismissal of the questioned counts of an otherwise valid indictment. *See Autry v. Wiley, supra; United States v. F/V Taiyo Maru, No. 28,* 395 F.Supp. 413 (D.Me.1975).

The second exception to the *Ker-Frisbie* rule is more germane to the issue here. In *United States v. Rauscher,* 119 U.S. 407, 7 S.Ct. 234, 30 L.Ed. 425 (1886), decided the same day as *Ker* and also written by Mr. Justice Miller, the Supreme Court held that an American court cannot try a defendant for crimes other than those for which he was extradited. *See Autry v. Wiley, supra; United States v. Paroutian,* 299 F.2d 486 (2d Cir. 1962). The rule "is designed to protect the extraditing government against abuse of its discretionary act of extradition," *United States v. Paroutian, supra* at 490, and is founded on a concern that extradition may be obtained for political prosecutions.

[I]t has been the policy of all governments to grant an asylum to persons who

have fled from their homes on account of political disturbances, and who might be there amendable to laws framed within regard to such subjects, and to the personal allegiance of the party. In many of the treaties of extradition between the civilized nations of the world, there is an express exclusion of the right to demand the extradition of offenders against such laws, and in none of them is this class of offenses mentioned as being the foundation of extradition proceedings.

*United States v. Rauscher, supra,* 119 U.S. at 420, 7 S.Ct. at 241.

The principle of "dual criminality" cited by Deaton—that the offenses must be made criminal by the laws of both nations—is arguably only one means of implementing the prohibition against political persecution by extradition. *Cf. Shapiro v. Ferrandina,* 478 F.2d 894, 906 n.12 (2d Cir. 1973). The same can be said of the "principle of specialty" itself: extradition is proper only for crimes listed in the treaty because otherwise there are no objective constraints on the extradition process.

■ It is clear that Deaton can find no comfort in the *Rauscher* exception to the general *Ker-Frisbie* rule. He was formally extradited pursuant to the 1930 treaty for all crimes specified in the May 28, 1976, indictment and the subsequent arrest warrant. *See* Note Verbale, No. 511–531E–382/76 (Federal Republic of Germany Foreign Office) (Bonn, Dec. 7, 1976); *see also* Note 186 (United States Embassy) (Bonn, June 11, 1976), *and* Note 212 (United States Embassy) (Bonn, July 8, 1976). It is also clear that the crimes for which Deaton has been indicted—primarily, an allegedly successful scheme to defraud the Northern Ohio Bank—have no political connotations whatsoever. Both the *Rauscher* exception and the policy behind it are thus satisfied by this Court's retention of jurisdiction over Deaton on all counts named in the indictment.

Other considerations peculiarly applicable to .treaties for extradition, and to these treaties in particular, fortify this conclusion. The surrender of a fugitive, duly charged in the country from which he has fled with a nonpolitical offense and one generally recognized as criminal at the place of asylum, involves no impairment of any legitimate public or private interest. The obligation to do what some nations have done voluntarily, in the interest of justice and friendly international relationships . . . should be construed more liberally than a criminal statute or the technical requirements of criminal procedure.

*Factor v. Laubenheimer,* 290 U.S. 276, 298, 54 S.Ct. 191, 197, 78 L.Ed. 315 (1933). The Court, relying on Rule 44.1, Fed.R.Civ.P. (since no comparable notice provision exists in the Rules of Criminal Procedure), finds that the crimes to which Deaton objects are either *"generally* recognized as criminal" (emphasis added) in West Germany, *see* German Penal Code, *American Series of Foreign Penal Codes,* G.O.W. Mueller, ed. (N.Y.U.1961), or, like use of interstate communications in a scheme to defraud, sufficiently peculiar to the political structure of the United States that it is unnecessary to look for a counterpart in the criminal law of West Germany. The Court in that last instance finds instructive this statement in *Factor v. Laubenheimer, supra* at 300, 54 S.Ct. at 198:

> Once the contracting parties are satisfied that an identified offense is generally recognized as criminal in both countries there is no occasion for stipulating that extradition shall fail merely because the fugitive may succeed in finding, in the country of refuge, some state, territory or district in which the offense charged is not punishable.

Deaton was properly extradited pursuant to a valid extradition treaty.

The discrete political considerations of international diplomacy of which this Court must take cognizance also militate in favor of trying Deaton on all counts of the instant indictment. By granting extradition of Deaton, West Germany has indicated its approval of his prosecution for the crimes alleged in the indictment.

As a matter of international law, the principle of specialty has been viewed as a privilege of the asylum state, designed to protect its dignity and interests, rather than a right accruing to the accused. *Shapiro v. Ferrandina, supra* at 906. Finally, the cases which argue most strongly in Deaton's favor—*Factor v. Laubenheimer* and *Shapiro v. Ferrandina,* both discussed *supra*—involve the extradition of an accused *from* the United States to a foreign nation. They are thus representative of an entirely different situation in which an American court first passes on the propriety of extradition pursuant to 18 U.S.C. § 3181 *et seq.* In such instances the *Ker-Frisbie* rule, applicable when fugitives are brought *into* the United States, is not controlling. Accordingly, this Court has proper jurisdiction over Deaton and the power to try him on all counts of the May 28, 1976, indictment.

## II. DISCOVERY

Deaton has also moved this Court for an order compelling the Government to provide him with a bill of particulars in connection with the indictment, and for discovery of certain documents and other evidence alleged to be in the possession of the Government. In regards to the request for a bill of particulars, Deaton primarily seeks more specificity as to Count I, dealing with conspiracy and the necessary proof of overt acts, and Counts IV and V, dealing with interstate transmission of communications in furtherance of a scheme to defraud Northern Ohio Bank.

■■ It is well-recognized that a bill of particulars is not a discovery device.

The purposes of a bill of particulars are to inform the defendant of the nature of the charge against him with sufficient precision to enable him to prepare for trial, to avoid or minimize the danger of surprise at the time of trial, and to enable him to plead his acquittal or conviction in bar of another prosecution for the same offense when the indictment itself is too vague, and indefinite for such purposes.

*United States v. Birmley,* 529 F.2d 103, 108 (6th Cir. 1976). A bill of particulars should not be used to force disclosure of the Government's case in advance of trial or to unduly restrict the Government's subsequent proof at trial. *See Spinelli v. United States,* 382 F.2d 871 (8th Cir. 1967), *rev'd on other grounds,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969); *United States v. Palmer,* No. CR 76–129 (N.D.Ohio Mar. 23, 1977) (Lambros, J.); *United States v. Ronci,* No. CR 75–24 Y (N.D.Ohio Apr. 9, 1976) (Lambros, J.); *United States v. Manetti,* 323 F.Supp. 683 (D.Del.1971). More specifically, a bill of particulars may not be used to compel the Government to provide the essential facts regarding the existence and formation of a conspiracy, including the overt acts which it intends to prove. *United States v. Palmer, supra; United States v. Iannelli,* 53 F.R.D. 482 (S.D.N.Y.1971).

■ The indictment here is sufficiently specific to serve the requirements set out in *United States v. Birmley, supra,* as to each of the counts for which Deaton seeks particularization. Accordingly, the request for a bill of particulars must be denied in its entirety. The Court now turns to Deaton's discovery requests.

The Court finds that the Government's response to Deaton's first two requests, dealing with documentary evidence supposedly in the possession of the Government, is sufficient. The Government has agreed to provide all material encompassed by Rule 16, Fed.R.Crim.P., including items which are uncovered during further preparation, and has agreed to furnish or search for the other documents requested by Deaton if and when they are obtained by the Government, or a more specific request is made therefore. *See United States v. Palmer, supra.*

■ Deaton's third and final discovery request is for disclosure of all promises or inducements, if any, made to co-conspirators who may testify against him at trial. Deaton argues that *Giglio v. United States,* 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972), requires the disclosure of such information prior to any such witness's direct

testimony. Although the Court realizes that such representations or promises made to important witnesses is relevant to their credibility and should be disclosed at some point to defense counsel, the better view of *Giglio v. United States* is that it is not a discovery device, and that disclosure is properly left to development during examination at trial. *See United States v. Palmer, supra; United States v. Mitchell,* 372 F.Supp. 1239 (S.D.N.Y.1973). *Cf. Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); *Napue v. Illinois,* 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959). Accordingly, upon noting that the Government has recognized its responsibilities under *Giglio v. United States,* the Court grants Deaton's third request to the extent that the Government shall reveal immediately before any witness begins to testify any promises or representations made to that witness. *See United States v. Palmer, supra.*

### III. CONCLUSION

The Court finds that Deaton has been formally and properly extradited to stand trial in this Court for all crimes alleged in the indictment of May 28, 1976. Thus his motions for discharge and for dismissal of Counts I, III, IV and V are denied. The Court also finds that Deaton's motion for a bill of particulars and his first two discovery requests are not well-taken, and consequently they are denied. However, the Court grants his third request only so far as expressed herein.

IT IS SO ORDERED.