UNITED STATES of America,
Plaintiff-Appellant,

v.

Raymond J. CADET, Barry Saffaie, Tabassom Ayazi, Defendants-Appellees.

No. 82–1631.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 13, 1983.

Decided March 13, 1984.

As Amended July 2, 1984.

Sanford Svetcov, Asst. U.S. Atty., San Francisco, Cal., for plaintiff-appellant.

Lawrence A. Callaghan, Goldstein & Phillips, San Francisco, Cal., Daniel Cook, San Jose, Cal., Paul B. Meltzer, Santa Cruz, Cal., for defendants-appellees.

Before ALARCON, CANBY, and REINHARDT, Circuit Judges.

ALARCON, Circuit Judge:

I.

The government has appealed from the judgment dismissing a four-count indictment against Raymond J. Cadet (Cadet), Barry Saffaie (Saffaie), and Tabassom Ayazi (Ayazi) with prejudice.

We must decide whether the district court erred in dismissing this matter because of the government's good faith refusal to obey certain provisions of the court's discovery order. We have concluded that it

was improper to dismiss the indictment since significant portions of the order were invalid.

## II.

### PERTINENT FACTS

An indictment was returned by the grand jury on June 30, 1982, charging Cadet, Saffaie, and Ayazi with transporting, receiving, and selling documents allegedly stolen from International Business Machines Corporation (IBM).

On July 9, 1982, the court ordered that the defendants' pretrial motions be filed by July 30, 1982. The government was ordered to file its response to such motions by August 6, 1982. Counsel for Saffaie asked the court to set a trial date outside the "statutory 70-day period because of the complexity of the case" and to schedule the hearing motions "sometime in either October or November." The court was advised by Saffaie's attorney that the government had no objection. The court denied this request and set the matter for trial within the statutory time after stating that the alleged complexity of the case did not constitute good cause for the suggested delay. The court ordered that all pretrial motions be heard on August 13, 1982. September 7, 1982 was scheduled as the date for trial by jury.

On July 30, 1982, Saffaie and Ayazi filed a joint motion for discovery and requested that a hearing be conducted on August 13, 1983. Cadet filed a separate discovery motion requesting a hearing on the same date.

On July 30, 1982, counsel for Saffaie and Ayazi also filed a motion to dismiss the charges against them with prejudice "due to the government's failure to comply with formal and informal requests for discovery pursuant to Rules 12(d)(2) and 16 of the Federal Rules of Criminal Procedure."

On August 6, 1982, the government filed its response to these motions.

## III.

Hearing on the discovery motions was held on August 13, 1982.

The court granted Cadet's request for discovery as to the following material described in his motion filed July 30, 1982.

"(1) All statements, confessions, admissions, remarks, or utterances of the defendants, made to investigating officers or to third parties, including IBM Corporation, National Semiconductor (NSC) and National Advance Systems (NAS) or employees or agents of said companies, as well as those statements, admissions, remarks, and utterances which may have been incorporated in any report, statement, memorandum, or other document or recording prepared by federal, state, or local government agents, including but not limited to investigators and/or attorneys of the FBI or the Department of Justice, or by any other persons working in conjunction with such agents, including but not limited to Richard Callaghan and/or other employees of IBM Corporation (IBM). In addition, the names of those present at the time the above statements were made.

"(2) The results and laboratory reports of scientific tests made in connection with this case, including, but not limited to fingerprints, or handwriting, which are in the possession, custody, or control of the United States or its agents, including IBM. Further, the results and reports of any analysis and/or expert opinion regarding the value and/or use of materials allegedly converted, stolen, or copied from IBM.

"(3) If any expert witness will be called by the prosecution, the name, address, qualifications, and subject of testimony of such expert, together with a copy of any report prepared by or for him or her, as well as copies of financial and accounting worksheets used as back-up by said expert.

"(4) An inventory of all physical or documentary evidence intended to be offered as evidence at the trial of this case, including the time, place, and means of its acquisition or seizure, its present location, and the name, address, and telephone number of its present custodian, and also an opportunity to inspect, examine, and make copies thereof, exclusive of documents provided informally by the United States.

"(5) All physical or documentary evidence, including but not limited to tangible objects, books, papers, documents, and interviews of defendants by non-government entities, including present or past employees, in custody or control of the United States, connected with this case which the plaintiff intends to offer as evidence at the trial, including those documents to be used to refresh recollection or for impeachment purposes, including the so-called Adirondack work books, including all editions and revisions, for the IBM 3081 Computer Processor Unit and its system development technology.

"(6) An inventory of all physical and documentary evidence relevant to the case obtained by the plaintiff by seizure, process, or any other means, which the prosecution does not intend to offer as evidence at trial, including its time, place, and means of acquisition or seizure, its present location, the name, address, and telephone number of its present custodian, and an opportunity to inspect and make copies thereof.

"(10) The names and addresses of all witnesses to the actions described in the Indictment whom the government does not intend to call as witnesses at the trial.[1]

"(11) Copies of all statements made by witnesses in this case, whether or not the prosecution intends to call the witnesses, which are in the possession or control of the prosecution or the existence of which is known, or by diligence may become known to the attorney for the government.[2]

"(12) All statements or acts of persons believed by the government to be co-participants of the defendant, which the government intends to offer into evidence, as declarations or acts of co-participants of co-conspirators.[3]

"(15) Describe any prior or subsequent similar acts of defendants or co-defendants the government intends to introduce at trial.

"(16) Any matter which would tend in any way to impeach any government witness, particularly including promises to agreements with any witness which may in any manner whatsoever be construed as inducement or reward for testimony at trial.[4]

"(17) All information in whatever form, notwithstanding its nature or sources, which would tend in any way to benefit the defendants, whether by way of exculpation or of preparation for or presentation of their defense against the charges in this Indictment, ... as well as the complete set of the so-called Adirondack work books, including all revisions, editions, amendments, and dates of editions and revisions for the IBM 3081. This request encompasses the work books for all components of the IBM . Processor Unit, including both Central Processor Units, the System Controller, External Data Controller and Central Storage Units.

"(19) It is requested that the Court direct the United States Attorney to supply to counsel for the defendants any material previously requested or which is subject to discovery or inspection which comes into the possession, knowledge or control of the United States Attorney."

---

1. The district court defined its use of the term "witness" in item 10 as limited to "individuals that were potential witnesses that either witnessed some act or observed some documents, conduct, behavior or act." When the prosecutor inquired as to whether this request was limited to persons "who may have information helpful to the defense within the meaning of *Brady*", the court replied: "There must have been some reason for your investigators to inquire of them and obtain information from them."

2. The court limited this request to "*Brady v. Maryland* material and Jencks Act material, in the time allotted by Jencks."

3. Later in these proceedings, at the request of the government, the court stated that item 12 was granted "to the extent that it did not conflict with the Jencks Act."

4. The government advised the court it was prepared to turn over all impeaching matter which was material. The prosecutor was ordered to turn over all impeaching material to the court forthwith for an in-camera determination as to its materiality.

## IV.

The court ordered the prosecution to comply with the following requests for discovery which were set forth in the motion filed by Saffaie and Ayazi.

"1. A statement of the past and present relationship of International Business Machines (hereinafter "IBM"), and Palyn Associates, or their officers, agents, employees, contractors and/or consultants with the United States government, its agencies, departments, and other entities, and its agents and/or employees and, in particular, law enforcement or other political agencies, departments or entities, or their employees or agents, involved, directly or indirectly, in the investigation or prosecution of the instant case, of the case of *United States v. Hitachi, Ltd. et al.,* Cr. No. 82–372 SW (S.J. (N.D.Cal.1982) (hereinafter the *"Hitachi* case"), or of the case of *United States v. Mitsubishi Electric Corp., et al.,* Cr. No. 82–396–WAI (S.J.) (N.D.Cal.1982) (hereinafter the "Mitsubishi case"), and a like statement concerning all other criminal or civil cases, past or present, of a similar nature; production of the names, addresses, and titles of all persons involved in the relationship, any documents pertaining to the relationship, and the time period of the beginning and end of the relationship.[5]

"2. A statement of all written or oral agreements or understandings, express or implied, between IBM or Palyn Associates, their officers, agents, employees, consultants and/or contractors with the United States government, its agencies, departments, and other entities and its agents and employees, and, in particular, law enforcement or other political agencies, departments or entities, or its agents and/or employees, concerning any aspect of IBM cooperation or assistance in the investigation or prosecution in the instant case, of the Hitachi case, or the Mitsubishi case, and a like statement concerning cooperation or assistance in all other criminal or civil cases, past or present, of a similar nature; production of the names, addresses, and titles of all persons involved in the negotiation, making, execution or interpretation of such agreements or understandings, any documents pertaining to such agreements or understandings, and the time period of the beginning and end of such agreements or understandings.[6]

"3. Production of all government personnel or other files pertaining to FBI Special Agents Alan J. Garretson and Mary B. Williams, and of Richard A. Callahan, believed to be the "confidential source" referred to in the complaints filed herein against defendants Saffaie and Ayazi, who is alleged to have been a special agent in the FBI for several years, a supervisory employee of the U.S. Department of Treasury Inspection Service for five years, and an executive in the U.S. Bureau of Narcotics and Dangerous Drugs for seven years before going to work for IBM in 1973.[7]

5. The government objected to the granting of this request on the ground that nothing in the rules or case law supports an order that a document must be created summarizing past relationships between the government, IBM and Palyn. The court replied that a prima facie case had been presented which established that Mr. Callahan was involved in the IBM–FBI cases.

6. The prosecutor was not permitted to argue his position on this matter. Instead, the court stated as follows: "We'll turn now to Item 2. With respect to item 2, the court grants that request. And again your argument would be the same Mr. Ward, and I note your argument, and its the same as previously given."

7. The government objected to item 3 in the following language:

Your honor, I think it is an unwarranted intrusion. There is absolutely no reason why they should go into the personnel records of government agents who were involved in this particular case. There has been nothing advanced by these defendants as to why those records would be helpful to them. I think this is an intrusion on the privacy of these individuals without some kind of a showing that this relevant to a defense in this case. The court replied: "All right. Thank you Mr. Ward."

The court proceeded to consider the next request without requiring Saffaie or Ayazi to make a showing that the personnel records would be helpful or relevant to the presentation of the defense.

"4. Any written or recorded statements made by the defendants in this case, or any alleged co-conspirator or joint venturer, to law enforcement officers or to third parties, or copies thereof, within the possession, custody, or control of the government ... the substance of any oral statements which the government intends to offer in evidence at the trial made by any defendant, or any alleged co-conspirator or joint venturer, whether before or after arrest, in response to interrogation by any person then known to be a government agent, as well as the names of those present at the time any of the above statements were made....

"5. A copy of the prior criminal record, if there be any, of all defendants.

"6. All physical or documentary evidence—including but not limited to books, papers, documents, photographs, tangible objects, or buildings or places—obtained by the government whether by seizure, process—including grand jury subpoena—voluntary production, or other means, which the government obtained from or belong to any defendant, or which the government intends to use at trial, or which the government does not intend to use at trial but is deemed to be material to the preparation of the defense; the exact location of any physical or tangible object seized from any defendant.

"It is further requested that the government produce a copy of all documents produced by any defendant or third person pursuant to any grand jury subpoena, if any, or other process, or by voluntary surrender or consent, and provide a specific description of the circumstances of any search and/or seizure and the manner of any such search and/or seizure, or consentual seizure, including, but not limited to:

"a) the names, titles, and addresses of any law enforcement officers or third parties present;

"b) a list of items in addition to the above-named which were seized and the exact location of their seizure;

"c) the exact time of the search, and the exact time of the seizure of such item;

"d) the manner of entry into the place where any items were seized;

"e) production of copies of all search warrants and supporting affidavits, consent search forms, or other forms of process or other documents relating to any search and/or seizure, voluntary production, or consent search."

It is further requested that the government, in particular, produce the following documents or tangible objects:

"a) all documents transmitted, handed, or other wise conveyed or obtained, directly or indirectly, by any defendant or third person or entity, or IBM, National Advanced Systems (hereinafter "NAS"), National Semiconductor Corporation (hereinafter "NSC"), Palyn Associates, the FBI or the U.S. Department of Justice, or their officers, agents and/or employees, that are now in the possession of the government or possessed by some third party but intended to be produced for the government, including, but not limited to:

"1) the minutes, agenda, or other documents, or other information, in whatever form, of, or pertaining to NAS, the NAS Systems Architecture and Planning Group (hereinafter "SAP") and the NAS System Study Group (hereinafter "SSG"), from whatever source;

"2) all documents, tangible objects, or other information, in whatever form, seized or otherwise obtained, voluntarily or involuntarily, by the government, its departments, agencies, or other entities, or its agents and/or employees from NAS, NSC, IBM, Palyn Associates, Glenmar Associates, Inc., Hitachi, Ltd., Hitachi America, Ltd., Mitsubishi Electric Corporation, NCL Data, Inc., their officers, agents, employees, contractors, consultants and/or subsidiaries; and of the defendants or any other third persons, including, but not limited to: (1) Kenji Hayashi, Senior Engineer, Kanagawa Works, Hitachi, Ltd., Max Paley, Robert Domenico (phonetic), Richard A. Callahan; the 'source' of the 'confidential source' described in the complaints filed herein against defendants Saffaie and Ayazi, F. Kvamme, President of NAS, J. Ashbrook,

Vice President of NAS, David Turner, Vice President of NAS, D. Martin, Executive Vice President of NAS, William G. Cox, Director of Systems Architecture and Planning at NAS, and K. Coughlin, J. Gallops, J. Doody, A. Lenk, or any other individual with NAS, SAP, SSG, or NSC, Dr. Spork, President of NSC, George Rakonovitz, Chief of Security at NSC, and Michael Sterrett and Patrick Clark, investigators and/or consultants with NAS and/or NSC.

"3) copies of all documents or other information, in whatever form, pertaining to the planning, creation, and operation of Glenmar Associates, Inc.,

"b) copies of all volumes of the 'Adirondack Hardware Design Workbooks' allegedly transported, received, concealed, stored, bartered, sold or disposed of by the defendants in this case,

"c) copies of all volumes of the current 'Adirondack Hardware Design Workbooks', including any supplements, notes, or other information bringing the workbooks current with present research and development, and continuing supplementation of such workbooks, as this case develops, as new research and development continues,

"d) copies of all volumes of the 'Adirondack Hardware Design Workbooks' in the possession, custody, or control of the FBI or the United States government, its departments, agencies, or other entities, agents and/or employees, and, in particular, in the possession, custody, or control of FBI Special Agent Alan J. Garretson on June 21 or 22, 1982.

"e) copies of all volumes of the 'Adirondack Hardware Design Workbooks' showed to FBI Special Agent Kenneth C. Thompson on October 23, 1981, as related in the affidavits in support of the complaints filed herein against defendants Saffaie and Ayazi.

"f) the names, titles, and addresses of all IBM employees who 'verified the confidentiality' of the 'Adirondack Hardware Design Workbooks', as related in the affidavits in support of the complaints filed herein against defendants Saffaie and Ayazi.

"g) copies of all documents the 'confidential source' showed to FBI Special Agent Kenneth C. Thompson on December 15, 1981, as related in the affidavits in support of the complaints filed herein against defendants Saffaie and Ayazi.

"h) copies of the list that Kenji Hayashi allegedly provided Special Agent Alan B. Garretson on November 6, 1981, as related in the Hitachi case complaint.

"i) copies of all letters or other correspondence between Kenji Hayashi and the 'confidential source' and Dr. Kisaburo Nokazawa and the "confidential source", as described in the complaint in the Hitachi case.

"j) copies of all audio recordings or video recordings of any of the defendants in the instant case, or pertaining to the instant case, and copies of all audio recordings and video recordings pertaining to the Hitachi case and the Mitsubishi case.

"k) a complete inventory of all items, documents, or other tangible objects in the possession of the government or IBM relating to the charges against each of the defendants.

"$l$) all IBM classified documents and all IBM nonclassified documents relating, directly or indirectly to this case, and all internal manuals on the IBM classification system. Defendant must be able to determine if the 1972 information involved in this case was classified, was appropriately classified, was classified in 1980–1982, and is still classified. 'IBM's internal manual provided that information was not confidential unless so marked.' *Arnold v. IBM,* 637 F.2d 1350, 1358 (9th Cir.1981). Perhaps the information involved herein was not classified, or if classified 10 years ago, is no longer subject to classification by the company's own policies and procedures.

"7) The reports of any scientific tests, examinations or experiments, or physical or mental examinations, or copies thereof, including, but not limited to: (1) a statement of all material or other information or sources considered by the examiner in arriving at an opinion, the methodology used,

and the findings and conclusions of the examiner, (2) a resume and curriculum vitae of the examiner's qualifications, experience, subject matter of the examiner's testimony, and prior occasions of testimony as an expert, and (3) any worksheets, photographs, notes, or other things used to assist the examiner in reaching an opinion and recording the process or methodology of reaching an opinion.

"8) For any of the defendants and any alleged coconspiratory or joint venturer, whether or not named in this indictment, but known to the government, his/her statement, if any was taken, and if no written statements were obtained, the investigating officer's interview report relating to any alleged coconspirator's or joint venturer's statement, relating to the offenses charged and related offenses under investigation, and testimony. In addition, the names of any investigating officer or officers present at the time these statements were taken.[8]

"9) The names and addresses of witnesses, and when relevant, qualifications, of all witnesses whom the government intends to call in this case, including any expert witnesses, and copies of all statements made by these witnesses in the possession of the government, the existence of which is known, or by the exercise of due diligence may become known, to the attorney for the government, said statements to be made available to the defendant within a reasonable period but in not less than [seven (7)] days prior to trial. Defendants further request a list of all depositions or interrogatories, or other testimony, whether in past or present civil or criminal proceedings and whether or not under oath, and any other statements of such witnesses or entities, or persons so situated as to legally bind such witnesses or entities which is known to the government or by the exercise of due diligence may become known to the government or its attorneys, agents, or other employees. Said request to include, but not be limited to, all IBM employees, agents, contractors, or consultants who were contacted

by the Government in the investigation, preparation or prosecution of this case.

"10) The names and addresses and statements of all witnesses to the offenses charged in the indictment whom the government does not intend to call as witnesses in this case.

"11) State whether any intended government or IBM witness has any arrest or conviction record whatsoever, whether federal, state or local, and the nature of the offense, the name and location of the court, and the case number, and the location of such arrest or conviction.

"13) All information in whatever form, source or nature which is favorable to the defense and material to the issues of either guilt or punishment, either through an indication of the defendants' innocence, negation of any elements of the charged offenses, or through the potential impeachment of government witnesses or contradiction of government evidence; and all information which may be or become of benefit to the defendants in preparing for or presenting the merits of their defenses at trial. Defendants further request, in particular, all information, in whatever form and from whatever source, concerning the extent to which the 'goods, wares, or merchandise' are either, in whole or in part, not proprietary to IBM or are already, in whole or in part, in the public domain, outdated, or worthless, or of a value of less than $5,000.00, or that such 'goods, wares, or merchandise' were not stolen, converted, or otherwise appropriately the subject of criminal prosecution and sanctions, or were not in, moving as a part of or constituting interstate or foreign commerce. Specifically, defendants' request all documents which discuss the information contained in the 'Adirondack Hardware Design Workbooks'. Counsel for defendant Saffaie is aware of a document showing that all of the information contained in the 'Adirondack Hardware Design Workbooks' is in fact in the public domain and further has information that this document is now in the hands of the

---

8. In response to the prosecutor's request for a clarification as to item 8, the court ruled that discovery would be limited to statements of

co-conspirators whom the government did *not* intend to call as witnesses.

government. Defendant has made an informal Brady demand for this specific document through a telephone call of July 22, 1982 between his counsel, Paul B. Meltzer, and the attorney for the government, Gregory H. Ward, but nothing has been forthcoming from the government.[9]

"14) The name, title, and address of any government witness, whether intended to be called at trial or not, purporting to be a reliable confidential *informant,* or confidential source, and any statement given by such person to the government, IBM, Palyn Associates, NSC, NAS, Hitachi Ltd., or their officers, agents, employees, contractors, or consultants.[10]

"15) All evidence of any promises, deals, or understandings made and/or valuable consideration paid to any persons or business entities, such as, but not limited to, IBM, NAS, and Palyn Associates acting in the employ of the government or acting in its behalf or in cooperation with the government in connection with this case, whether or not in exchange for his/her/their testimony and/or involvement with this case.

"16) Describe in detail any prior or subsequent similar acts of any of the defendants the government intends to introduce at trial, and disclose all information requested in paragraphs one (1) through fifteen (15) above as it may relate to said similar acts.

"17) all information concerning any line up or show up in connection with the charges against the defendants herein including all photographs, slides and/or motion pictures used in an attempt to identify persons material to the charges, and including description of the procedures followed and the names and addresses of all persons present at any showup or lineup.

"18) Providing of copies of all statements of witnesses—'Jencks Act' statements—to counsel for the defendants not less than [seven (7)] days before trial."

### V.

After concluding the hearing on the discovery motions, the court set aside the previous trial date and rescheduled the matter for trial on October 18, 1982.[11] The motion

---

9. Counsel for the government stated that item 13 was "basically a request for *Brady* material, and the government certainly has no objection to that." When asked why the *Brady* material had not already been turned over to the defendants, counsel for the government replied that it was not yet available.

10. In clarifying this portion of the order, the court advised the government that it would be required to turn over the names of "tipsters" even if they were not percipient witnesses.

11. On August 16, 1982, the district court filed the following order concerning its ruling on the discovery motions presented by Saffaie and Ayazi:

This Court having considered the papers filed by the parties and the contentions of the parties at the hearing on pretrial motions, IT IS HEREBY ORDERED that:
A. As to the SAFFAIE and AYAZI Motion for Discovery:
1. *Request Number 1:* GRANTED;
2. *Request Number 2:* GRANTED;
3. *Request Number 3:* GRANTED;
4. *Request Number 4:* GRANTED, except as to statements in the possession, custody, or control solely of IBM or the attorneys for IBM; DENIED, without prejudice as to lines 18, page four (4) (beginning with the words "and the") to line 1, page five (5);
5. *Request Number 5:* GRANTED;

6. *Request Number 6:* GRANTED as to all physical or documentary evidence in the possession of the government;
7. *Request Numbers 7 & 9:* GRANTED and to be provided no later than seven (7) days prior to trial;
8. *Request Number 8:* GRANTED as to co-conspirators and/or joint venturers the government does not intend to call as witnesses but intends to use such statements;
9. *Request Number 10:* GRANTED;
10. *Request Number 11:* GRANTED and to be provided no later than seven (7) days prior to trial;
11. *Request Number 11:* GRANTED and to be provided no later than seven (7) days prior to trial;
12. *Request Number 12:* DENIED without prejudice;
13. *Request Number 13:* GRANTED;
14. *Request Number 14:* GRANTED, but statement production limited to statements in the possession of the government;
15. *Request Number 15:* GRANTED as to promises, deals, or understandings or valuable consideration paid or made by the government or its agents, to be provided no later than seven (7) days prior to trial;
16. *Request Number 16:* GRANTED, to be provided no later than seven (7) days prior to trial;
17. *Request Number 17:* DENIED;

for dismissal filed by Saffaie and Azayi was denied.

## VI.

The government filed a motion on August 23, 1983 seeking modification of the order issued at the request of Saffaie and Ayazi granting items 1, 2, 3, 4, 6, 13, and 14. On August 25, 1983, the government moved for reconsideration of the order issued in response to Cadet's request for discovery.

## VII.

In the government's motion for reconsideration of the August 18, 1982 discovery order granted at Cadet's request, the government urged the court to limit requests 4, 5, and 6 to "those documents and objects which come within Rule 16."

On September 3, 1982, the district court conducted a hearing on the government's motions for modification and reconsideration of the discovery orders.

The court denied the government's motions except as to item number 4 requested by Saffaie and Ayazi. Item number 4 was modified to exclude all statements made to

18. *Request Number 18:* GRANTED, to be provided no later than seven (7) days prior to trial.

The district court issued the following order concerning Cadet's request for discovery on August 18, 1983:

After hearing of defendant Raymond Cadet's motion for discovery and good cause appearing therefor, it is hereby ordered that as to each of the following paragraphs of defendant Cadet's motion that the motion is granted, granted in part or denied as hereafter set forth.

Paragraph 1: Granted except insofar as it relates to statements made to government witnesses or prospective witnesses.

Paragraph 2: Granted.

Paragraph 3: Granted with the government to comply no later than seven (7) days before trial.

Paragraph 4: Granted with the government to comply no later than seven (7) days before trial.

Paragraph 5: Granted with the government to comply no later than seven (7) days before trial.

Paragraph 6: Granted with the government to comply no later than seven (7) days before trial.

Paragraph 7: Denied.

Paragraph 8: Denied.

prospective government witnesses. The court made the following comments in ruling on these matters:

Now, with respect to the government's motion for modification of the discovery order. With respect to that the court will address each of the requests as presented to the court.

With respect to request no. 1, the court finds that the plaintiff's tactic in furnishing a statement about the FBI's relationship with IBM and Palyn is properly criticized by the defendant. It is counter to the general principles of judicial discovery for one party to define in advance what materials the other parties will need to properly prepare for trial.

Accordingly, the court denies plaintiff's motion regarding request no. 1.

With respect to request no. 2, the court finds that the plaintiff's flat assertion that their FBI–IBM agreement satisfies defendants needs is unsupported by argument or authority. Good cause appearing therefore, the court denies plaintiff's motion regarding request no. 2.

Paragraph 9: Granted with the government to comply no later than seven (7) days before trial.

Paragraph 10: Granted and insofar as the government has any objection they are to forthwith provide the names of the witnesses and the description of their interview to the court, *in camera.*

Paragraph 11: Granted insofar as said documents and/or statements are required to be produced by *Brady v. Maryland* and/or 18 U.S.C. 3500.

Paragraph 12: Granted insofar as said discovery is not in conflict with 18 U.S.C. 3500.

Paragraph 13: Granted with the government to comply no later than seven (7) days before trial.

Paragraph 14: Denied since the information requested has been previously provided.

Paragraph 15: Granted with the government to comply no later than seven (7) days before trial.

Paragraph 16: Granted.

Paragraph 17: Granted except for grand jury transcripts.

Paragraph 18: Denied based on the representation of the government that no such records are kept.

Paragraph 19: Granted.

With respect to request no. 3, the court finds that the seven reasons advanced by defendants as to why the personnel files are material to the defense are on their face satisfactory. The plaintiff's motion, written in advance of defendants' reply, does not address those seven points. But even in spite of that, and giving all consideration to the motion brought by plaintiff, the court finds that with respect to request no. 3 it is without merit and it's therefore denied.

With respect to request no. 4, as to this request, pursuant to the dictates of *United States v. Walk,* and the provisions of the Jencks Act, I feel that I must exclude, under item no. 4, all statements made to prospective government witnesses. Other than that, the previous order will stand.

With respect to government's request no. 6, the government cites no authority for the contention that Rule 16 subsection A subsection 1 subsection C would require a showing by defendant of a particularized need, and the court finds that no such need is necessary—or no such showing is necessary; therefore, good cause appearing, the court denies the plaintiff's motion with respect to request no. 6.

With respect to request no. 13, the court finds the government has offered no proof that the documents and information which the defendants seek are not material to the preparation of defendants' case and, therefore, within the purview of Rule 16, subsection A, subsection 1, subsection C; good causing [sic] appearing, the court denies plaintiff's motion with respect to request no. 13.

Now, with respect to request no. 14, the court, prior to argument, and the explanation given by Mr. Meltzer, felt that the government had a proper contention. The court is now satisfied that the defendant has shown a need for the identity of the informant, and that the identity is significant to the presentation of defendants' case.

Now, that completes the items the government objected to with respect to the defendants Suffaie (sic) and Ayazi.

Now, with respect to those of the request of Mr. Cadet, which were his requests no. 4, 5, and 6 the court finds no merit in the government's objection; and, good cause appearing therefore, those motions are denied as to requests 4, 5 and 6.

On September 20, 1982, Saffaie and Ayazi filed a motion to dismiss the indictment based on the government's failure to comply with their "formal and informal requests for discovery" and the district court's discovery orders of August 13, 1982 and September 3, 1982. The district court was advised that no discovery had been received pursuant to requests 7, 9, 11, 10, 16 and 18.

On September 21, 1982, Cadet filed a separate motion joining in the request that the indictment be dismissed.

### VIII.

The government filed its response to the defendants' motion to dismiss on September 23, 1982. The district court was advised that there was no lack of compliance with requests 7, 9, 11, 15, 16 and 18. As to these items the court's discovery order did not compel compliance until seven days before trial. The court was informed that the government had provided discovery of "all items which it intends to use at trial, all documents obtained from defendants, and numerous other documents which would not otherwise be discoverable under Rule 16, Federal Rules of Criminal Procedure."

The government declined to produce any additional statement of "the past and present relationship of IBM and Palyn Associates with all agencies, departments and entities of the United States as ordered by the court on August 13, 1982." In its written response, the government contended that the order was invalid because (1) the defendants failed to make a showing of materiality as required by Rule 16 and *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), (2) compliance would be unreasonably burdensome, and (3) production would jeopardize ongoing investigations.

The government also notified the court that it had failed to deliver the personnel files ordered pursuant to request number 3 because of the failure of the defendants to show the materiality of any information contained in these files.

The district court was notified that the government had complied in part with request number 6 by producing all documents it intended to use as evidence in its case in chief at trial. Further the government expressed its willingness to produce the documents referred to in sections 6(e), 6(g), 6(h) and 6(i), and to identify the employers requested in item 6(f). The court was told that the government would not comply with the remaining portions of the order because of the defendants' failure to show materiality as to those items in the government's possession. Insofar as request number 6 appears to require the production of material not in the possession of the government, the government stated it had no obligation to seek materials from third parties.

The court was further informed that the "names and addresses of and statements of all witnesses" the government does not intend to call would not be furnished as required by request number 10 unless such person would provide exculpatory evidence.

The government also declared it would decline to produce any "non-exculpatory material" which is included on request number 13.

The court was also told that it was "inappropriate to provide statements of confidential informants" as required by request number 14 prior to trial.

Finally, a stay of the court's order was requested pursuant to 28 C.F.R. § 16.27 pending review by the Deputy Attorney General of the United States Attorney's refusal to comply with the court's discovery order, as required by 28 C.F.R. § 16.24(f).

### IX.

Hearing on the defendants' motion to dismiss was held on September 24, 1982. The court advised counsel at the outset that it was considering incarceration of the United States Attorney for contempt based on his refusal to comply with the court's order and for his failure to obtain a timely review of his position from the Deputy Attorney General.

Counsel for Saffaie, Paul B. Meltzer, urged the court not to hold the United States Attorney in contempt, but, instead, to order dismissal of the indictment because "[t]here has been a serious violation of this court's order and it grossly prejudiced the defense." Mr. Meltzer informed the court that the defense "wants both workbooks that were turned over in the course of the transactions which formed the indictment, and also the later current Adirondack workbooks." The court interrupted counsel with the following observation: "Well, I can't understand Mr. Meltzer and attorneys for the government, how the very subject of this indictment, the books themselves, have not been turned over." Mr. Meltzer replied: "I can't either."

The government replied:

We have turned these over. Mr. Metzler wants us—the current I.B.M. workbooks of a similar nature which are not in our possession. I cannot go out and grab something from somebody else's possession and turn it over to defense. I don't have it. I can't turn it over.

The court suggested that defense counsel serve a subpoena duces tecum on I.B.M. The court thereupon took the motion to dismiss under submission and granted a stay of its discovery order until September 28, 1982.

### X.

The government informed the court at the September 28, 1982 hearing that the Deputy Attorney General had concurred in the recommendation of the United States Attorney that the government would not comply with items 1, 2, 3, 6, 10, 13 and 14 of the district court's discovery order.

After hearing argument, the court orally announced its decision to dismiss this case with prejudice because of the government's good faith refusal to comply with the discovery order and the government's delay in bringing defendants to trial. The court found that "the discovery ordered by the

court is necessary and proper for the preparation of the defendant's case herein" and that it was "indispensable in the interest of justice and due process of law." On October 15, 1982 the court filed its order and opinion and entered a judgment of dismissal of the indictment. The trial judge stated that in reaching his conclusion to dismiss "the court finds that the defendants could not go to trial and present their defenses without the discovery ordered by the court. This discovery is vital to their defense."

## XI.

The government has presented the following issues for our review:

One. Did the district court abuse its discretion in directing the government *to prepare* statements describing the past and present relationships and agreements of IBM and Palyn Associates with the United States government and all of its agencies in this and all similar civil and criminal cases and *to obtain* and provide copies of all documents involving these relationships and agreements as required in the discovery requests numbered 1 and 2?

Two. Did the district court abuse its discretion in directing the production of the entire personnel files of certain government agents for inspection by the defendants as required in discovery request 3?

Three. Did the district court abuse its discretion in directing the government to produce for inspection by the defendants, all physical and documentary material obtained or developed during the investigation of this matter that the government does *not* intend to offer in evidence as required in discovery request number 6?

Four. Did the district court abuse its discretion in ordering the government to provide the defendants with the names, addresses, and statements of all *witnesses* that the government did *not* intend to call as witnesses at the trial of this matter as required by request number 10?

Five. Did the district court abuse its discretion in ordering the production of *all* documents relating to the "Adirondack workbooks" in the absence of a showing that *each* of these documents was material to the defense under *Brady v. Maryland?*

Six. Did the district court abuse its discretion in ordering the production of any statements made by government informants including mere "tipsters" as required by request number 14?

## XII.

### Creation of Discovery Material

The government has partially complied with the requests numbered 1 and 2. The following statement was submitted in response to the defendants' request for information concerning the relationship between the government and IBM which would demonstrate that this prosecution was conducted "at the behest of and controlled by IBM."

On October 29, 1981, Richard A. Callahan and J.R. Rosetti, employees of IBM, met with Special Agents Jack Van Wagenen, James Sturgis and John Guido of the Federal Bureau of Investigation in Washington, D.C. Callahan and Rosetti explained to the agents that IBM had conducted an investigation which indicated that certain confidential information had been stolen or converted from IBM and transported to Hitachi, Ltd. in Japan. It was agreed that Callahan would meet with FBI agents in San Jose to discuss further investigation to be conducted by the FBI. It was further agreed that Callahan would assist the FBI investigation by serving as interface between the FBI and IBM, which would provide whatever assistance the FBI required of them. From this date on, all decisions relating to the investigation were made by the FBI, including the decision to include Callahan as an undercover operative. IBM provided assistance during the investigation as requested by the FBI, which assistance continued up through the date of return of this indictment.

Prior to October 29, 1981, the principals of Palyn Associates, Maxwell O. Paley and Robert Domenico, cooperated with IBM's internal investigation. After this date, Paley and Domenico assisted the

FBI as requested by the FBI. Callahan served as the interface between the FBI and Palyn Associates.

As previously indicated in the government's response to defendants' motion for discovery, the government agrees to treat Callahan, Paley and Domenico as if they were law enforcement personnel for the purposes of discovery. Defendants have received all statements made by them to these persons, if any.

In addition, the government produced a copy of a written cooperation agreement it had entered into with IBM.

The government declined to create a statement of the past and present relationship between the government, IBM and Palyn Associates in the investigation of *United States v. Hitachi, Ltd.*, CR No. 82–372–SW (SJ) (N.D.Cal.1982), *United States v. Mitsubishi Electric Corp., et al.*, CR No. 82–396 WAI (SJ) (D.C.Cal.1982), and all other federal criminal or civil cases of a similar nature. The government also refused to furnish a statement describing all written or oral agreements and all documents concerning IBM cooperation or assistance in the investigation of the *Hitachi* and the *Mitsubishi* cases, and all other federal criminal or civil cases, past or present, of a similar nature. In addition, the government also failed to produce the names and addresses of all persons involved in such relationships.

■ The defendants argued to the district court that if some material demonstrated that "a significant relationship exists between such entities as IBM and Palyn Associates and if the conduct of their officers, agents or employers is attributable to the government, it would be helpful in proving the defenses of entrapment and outrageous governmental conduct." Fed.R. Crim.P.Rule 16(a)(1)(C) provides that the defendant shall be entitled to discovery of materials in the "possession, custody, or control of the government" which are "material to the preparation of his defense." A showing of materiality, however, is "not satisfied by a mere conclusory allegation that the requested information is material to the preparation of the defense." *United States v. Conder*, 423 F.2d 904, 910 (6th

Cir.), *cert. denied*, 400 U.S. 958, 91 S.Ct. 357, 27 L.Ed.2d 267 (1970). While the district court is not limited in the exercise of its discretion to ordering the production of material that meets the Rule 16 standard, here there simply appears to be no justification in the record for this part of the court's order. The defendants failed to present any *facts* which would tend to show that the government was in possession of information that would be helpful to the defense. Before this court, Saffaie and Ayazi have not referred us to any facts in the record which demonstrate that the government has in its possession information material to the defense. Instead, Saffaie and Ayazi have limited their response to the government's argument on this issue to the following terse sentences: "The government contends the showing of materiality made by defendants was inadequate. Such a contention is directly at odds with the District Court's express and implicit findings." The district court did not make any specific finding of fact concerning items 1 and 2. The trial judge's statement that "the discovery ordered by the court is necessary and proper for the preparation of the defendants case herein" is wholly conclusory, unsupported by any facts in the record.

■ In the statement submitted in response to discovery items 1 and 2, the government acknowledges that Callahan, Paley, and Domenico were acting as agents of the government at the time of their first contact with the defendants. The defendants had requested discovery so as to determine whether IBM or Palyn representatives were acting as agents of the government in order to establish entrapment, or outrageous government conduct. The government's concession that these persons were acting as governmental agents adequately responded to this concern.

The government has acted responsively and appropriately in attempting to comply with the court's order concerning the requests numbered 1 and 2. We regret that in other respects, the government's conduct in this matter has been decidedly less conciliatory and responsible.

The government argues that the court's order concerning requests numbered 1 and 2 were overbroad and unreasonably burdensome in that it required a "massive and unreasonable nationwide canvas of all federal agencies, civil and criminal." No evidence was offered by either side as to the actual burden which would have been imposed in responding to this request. We need not reach this contention, however, because we believe that the government's submission in response to items 1 and 2 should satisfy any possible legitimate defense need for information concerning IBM's involvement in the conduct of the government's investigation of this matter. We find that the government has substantially complied with requests 1 and 2.

### B. Personnel Files

The court ordered the government to produce the personnel files of three agents of the Federal Bureau of Investigation for inspection by the defendants. The court stated that these records "were very germane to the issues before the court." In response to the discovery motions filed August 16, 1982, the government advised the district court that the request for the personnel files should be denied because no showing of materiality had been made. The government made a similar argument in *United States v. Deutsch,* 475 F.2d 55 (5th Cir. 1973). There, the government argued that the defendant had " 'failed to show that the records which he sought to inspect contained anything favorable to him.' " *Id.* at 58. The Fifth Circuit replied to this assertion as follows: "This is true, but it is not the answer to *Brady.* The burden is on the government to produce, not on the defendant." *Id.* at 58.

In its motion for reconsideration, the government offered for the first time to review these files to determine whether they contained any information helpful to the defense. The government requested that the court "modify its order to require the prosecutor to examine the personnel files for material helpful to the defense." The district court declined *sub silentio* to modify its order as requested. We find this belated request by the government curious

and disingenuous in light of the government's constitutional duty under *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), to disclose exculpatory information to an accused. No order was necessary to compel the government to accord due process to these defendants. Before this court, the government again offered to examine the personnel files for *Brady* material. That duty should have been performed in August of 1982, as soon as the government was made aware of the defendant's request for the personnel files in order to assist the defendants in their trial preparation. The prosecutor's oath of office, not the command of a federal court, should have compelled the government to produce any favorable evidence in the personnel records. While we cannot condone the prosecutor's recalcitrant behavior, it is evident to us the court abused its discretion in ordering disclosure of the entire personnel file without first conducting an in camera inspection to determine whether the files contained any *Brady* material.

In *United States v. Gardner,* 611 F.2d 770 (9th Cir.1980) we spelled out the proper procedure to follow where the government is confronted with a *Brady* question. In *Gardner* we stated:

> The prosecution may not suppress exculpatory evidence that is material to the issue of guilt or punishment. *Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). In a case in which a general request for exculpatory evidence is made, the test for materiality is whether the suppressed evidence "creates a reasonable doubt that did not otherwise exist." *United States v. Agurs,* 427 U.S. 97, 112, 96 S.Ct. 2392, 2402, 49 L.Ed.2d 342 (1976).
>
> In response to a request for exculpatory evidence the prosecution does not have a constitutional duty to disclose every bit of information that might affect the jury's decision; it need only disclose information favorable to the defense that meets the appropriate standard of materiality. *See Agurs,* 427 U.S. at 108–112, 96 S.Ct. 2392. If the prosecution is uncertain about the materiality of informa-

tion within its possession, it may submit the information to the trial court for an *in camera* inspection and evaluation. *See id.* at 106, 96 S.Ct. at 2399 (prosecutor may respond to specific request by "submitting the problem to the trial judge."); *United States v. Ross,* 511 F.2d 757, 765 (5th Cir.), *cert. denied,* 423 U.S. 836, 96 S.Ct. 62, 46 L.Ed.2d 54 (1975).

*Id.* at 774–75.

The district court abused its discretion in ordering that the *entire* personnel file be produced for inspection by the defendants. In view of the privacy interests involved, only that portion of the files which may contain evidence "material to the preparation of [a] defense" pursuant to Rule 16(a)(1)(C) or exculpatory under *Brady* and *Agurs* is discoverable.

### C. *Discovery of Physical and Documentary Evidence Not Intended for Use at Trial by Government*

The government claims that the district court abused its discretion in requiring the government to produce all physical and documentary evidence "which the government does not intend to use at trial but is deemed material to the preparation of the defense" as requested by Saffaie and Ayazi in item number 6. The government also challenges that portion of the court's order which granted Cadet's discovery request number 6 requiring the preparation of "[a]n inventory of all physical and documentary evidence relevant to the case . . . which the government does not intend to offer as evidence at trial."

The government asks us to find that these orders are invalid because the defendants failed to make a showing that these items were material to the preparation of the defense as required by Rule 16(a)(1)(C). We recognize that the trial court has broad discretion in deciding what items are material to the preparation of the defense. In this instance, however, we agree that the discovery request was so far ranging and potentially burdensome that it was an abuse of discretion to grant the portions of the request opposed by the government here.

■ To obtain discovery under Rule 16(a)(1)(C), a defendant must make a prima facie showing of materiality. *United States v. United States District Court, Central District of California,* 717 F.2d 478, 480 (9th Cir.1983); *United States v. Buckley,* 586 F.2d 498, 506 (5th Cir.1978), *cert. denied,* 440 U.S. 982, 99 S.Ct. 1792, 60 L.Ed.2d 242 (1979). A general description of the materials sought or a conclusory argument as to their materiality is insufficient to satisfy the requirements of Rule 16(a)(1)(C). *See United States v. Marshall,* 532 F.2d 1279, 1285 (9th Cir.1976) (general description and conclusory arguments are insufficient to show materiality under former Rule 16(b)). Cadet's request for all "relevant" evidence is equally inadequate to meet the requirements of Rule 16(a)(1)(C). *United States v. Cafaro,* 480 F.Supp. 511, 519 (S.D.N.Y.1979).

■ Defendants therefore have failed to make a showing of materiality sufficient to entitle them to discovery as of right under Rule 16(a)(1)(C). It is not necessary for them to make as strong a showing of materiality to uphold a trial court's discretionary granting of discovery as it would to overturn a trial court's denial of discovery. In this instance, however, the wholly conclusory showing and the great breadth of the discovery request convince us that it was an abuse of discretion for the trial court to grant the portions of item 6 disputed by the government before this court.

### D. *Names, Addresses and Statements of Witnesses the Prosecution Does Not Intend to Use*

The district court ordered the government to produce for Cadet's inspection the names and addresses of all "witnesses to the actions described in the indictment" whom the government does not intend to call at trial. The court also ordered the government to disclose the names and addresses of "all witnesses to the offenses charged in the indictment whom the government does not intend to call as witnesses in this case" as requested by Saffaie and Ayazi.

The government contends that "the identity of non-witnesses is not discoverable absent [a] showing of materiality." Appellants did not request the identity of *non-witnesses*. They sought the names and addresses of *witnesses* to the "actions" or "offenses" charged in the indictment. A person who has actually witnessed a crime through any of his senses can either provide evidence which is favorable to the defense or which may tend to raise a reasonable possibility that the accused is guilty. Thus, it was quite appropriate for the district court to conclude from the fact that the government did not intend to call a witness to the crime that there was a reasonable possibility that such person would be able to provide evidence favorable to the defense. No further showing of materiality was required. The government offered no evidence to rebut this logical inference. No legitimate governmental interest has been suggested which would justify denying to the accused the identity of a witness to a crime whose testimony may be exculpatory. "Witnesses, particularly eye witnesses, to a crime are the property of neither the prosecution nor the defense. Both sides have an equal right, and should have an equal opportunity, to interview them." *Gregory v. United States,* 369 F.2d 185, 188 (D.C.Cir. 1966). Thus, the district court's order compelling disclosure of the names and addresses of such witnesses did not constitute an abuse of discretion.

The court also compelled production of the *statements* of witnesses the prosecution did not intend to call. This portion of the court's order was contrary to the law of this circuit. In *United States v. Mills,* 641 F.2d 785 (9th Cir.), *cert. denied,* 454 U.S. 902, 102 S.Ct. 409, 70 L.Ed.2d 221 (1981), we held that Rule 16(a)(2) precludes the court from ordering the government to produce statements of prospective witnesses whom the government subsequently decides not to call at trial. 641 F.2d 789–90. The court abused its discretion in ordering the government to produce the statements of witnesses it did not intend to call at trial.

### F. Adirondack Hardware Design Workbooks

The government's objection to item 13 is not clear. On August 13, 1983 the government advised the district court that "13 is basically a request for *Brady* material, and *the government certainly has no objection to that.*" (emphasis added). In its opening brief before this court, the government again characterizes item 13 as a request for "exculpatory material under *Brady.*" The government appears to object to the specific request for "all documents which discuss the information contained in the Adirondack Hardware Design Workbooks." The government advises us that not all of these documents will contain *Brady* material. The government states that it will "provide all *Brady* material, if any, concerning these workbooks." Instead of defying the authority of the district court, the government advised the district court that it would produce all *Brady* material as soon as it became available. Any doubt concerning the applicability of *Brady* to any specific document referred to in item 13 should have been submitted to the court for an in camera review. The government has chosen instead to deny all discovery to the defendants, and suffer a dismissal, because the district court denied its request that item number 13 should be expressly limited to *Brady* material.

### E. Identity and Statements of Confidential Informants

Before the trial court the government took the position that the statements of confidential informants were not discoverable before trial. During oral argument the government advised this court that there are no undisclosed confidential informants. The government has not explained its failure to advise the trial court that the order was inappropriate because all the names of all informants had been revealed. The government's dissembling on this issue has been burdensome to both court systems. As appellate judges we are not in a position to decide questions of historical fact or credibility. Upon remand

of this matter, the district court should reexamine the government's duty to disclose the identity of its informants consistent with the requirements of *Roviaro v. United States*, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957). The court should determine whether there are any undisclosed informers whose testimony would be helpful to the defense. Request number 14, as submitted to the court, may be in conflict with *Roviaro*. We need not decide the validity of request number 14 at this time, however, because that issue may have become moot.

### CONCLUSION

■ Because we have determined that the court abused its discretion in ordering the government to comply with an order which is partially invalid, we must vacate the judgment dismissing this action as a disproportionate sanction for the lack of good faith compliance by the government.

We close our review of this matter, however, with the strong sense that this unfortunate contretemps could have been avoided had the United States Attorney's Office been willing to produce all *Brady* and Rule 16 material in a timely manner and to submit material as to which there was any doubt for in camera review. While the discovery order was overbroad in some respects, it appears to us that the United States Attorney was more concerned with forcing an appellate confrontation in this matter than attempting to effect a reasonable accommodation with the district court's earnest efforts to protect each defendant's right to inspect discoverable materials.

To ensure that the government will act promptly to fulfill its duties to the accused under the due process clause, the district court is directed to require the government to produce all *Brady* material now in the possession of the government within a certain date to be fixed by the court. The district court shall also order the government to submit for in camera inspection any material as to which there may be a doubt whether it will be helpful to the defendants. The district court is also requested to order the government to disclose the names and addresses of any witnesses to the crime charged in the indictment. If any doubt exists that a witness will be helpful to the defense, it should be resolved by the court in an in camera proceeding. The government should be ordered to submit the personnel records for an in camera inspection for *Brady* material. The district court should also determine whether any informants remain undisclosed. If so, the court should apply the balancing test set forth in *Roviaro* before ordering disclosure.

REVERSED and REMANDED.