UNITED STATES of America, Plaintiff,

v.

Barbara HALPIN, et al., Defendants.

No. 90–CR–321.

United States District Court,
N.D. Ohio, E.D.

June 2, 1992.

James C. Lynch, Asst. U.S. Atty., for plaintiff.

Ralph Cascarilla, Cleveland, OH, for Barbara Halpin.

David C. Eisler, John S. Pyle, Gold, Rotatori, Schwartz & Gibbons, Cleveland, OH, for David Halpin.

Patrick M. McLaughlin, Mansour, Gavin, Gerlack & Manos, Cleveland, OH, for Kuehne & Nagel, Inc.

Brent L. English, Cleveland, OH, for Patricia Weiland.

## ORDER

SAM H. BELL, District Judge.

Presently before the court are a number of matters concerning requests for orders of discovery filed by defendant Kuehne & Nagel, Inc. (K & N).

### I

■ Without indicating the intended use of such information, defendant moves the court for an *in camera* inspection of grand jury transcripts to determine whether exculpatory evidence—in particular, evidence from taped conversations of Barbara Halpin that were the subject of an earlier disclosure order by the court—was presented before that body by the government. Presumably, if an *in camera* inspection showed that this exculpatory evidence had not been presented to the grand jury, this would be the basis of a motion to dismiss the indictment.

In a recent opinion of the Supreme Court, *United States v. Williams,* —— U.S. ——, 112 S.Ct. 294, 116 L.Ed.2d 239 (1992), it was held that a federal prosecutor is under no duty to present exculpatory evidence to the grand jury, and that a district court may not dismiss an otherwise valid indictment for a prosecutor's failure to do so. On this basis, defendant's motion is denied. See also *United States v. Adamo,* 742 F.2d 927, 936–38 (6th Cir.1984), cert. denied 469 U.S. 1193, 105 S.Ct. 971, 83 L.Ed.2d 975 (1985); *United States v. Ruyle,* 524 F.2d 1133, 1135–36 (6th Cir.

1975), cert. denied 425 U.S. 934, 96 S.Ct. 1664, 48 L.Ed.2d 175 (1976).

## II

■ Defendant also requests an *in camera* review of government documents that allegedly authorized a government informant, Joseph Cione, Jr., to participate in ongoing crimes, in order to determine whether departmental policy guidelines governing use of informants and their activities were followed. Apart from asserting its belief that the question of whether the government authorized Cione to participate in ongoing crimes "must be answered", the defendant fails to articulate the relevance or need for such evidence, and fails to establish any legal grounds for its disclosure. As best can be discerned by the court, this information would go toward impeaching the credibility of Cione, should he be called as a witness for the government. To the extent that such evidence is useful for impeachment purposes, it is subject to disclosure at the time the witness testifies at trial, but is not subject to pretrial disclosure. See *United States v. Presser*, 844 F.2d 1275, 1285 (6th Cir.1988); *United States v. Deaton*, 448 F.Supp. 532, 537–38 (N.D.Ohio 1978). Therefore, this request is denied as premature.

## III

■ Defendant further requests an *in camera* review of documentary evidence in the possession of the government "which reflects that Barbara Halpin authorized and issued K & N checks to the Cione companies and which demonstrates that those checks were either cashed, or deposited in accounts controlled by Halpin, the Ciones, or their associates ... [including] any and all accounts, or documents, which the government believes are 'laundering' accounts relevant to this litigation". The parties are at odds over whether or not this evidence is exculpatory and thus subject to discovery under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). *Brady* requires that the government turn over evidence in its possession that is both favorable to the accused and

material to guilt or punishment; "material" evidence in the context of *Brady* has been narrowly defined to encompass only such evidence as has a reasonable probability of determining the outcome of trial. *Pennsylvania v. Ritchie*, 480 U.S. 39, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987).

■ The conflict over whether or not the requested materials are exculpatory appears to stem, in part at least, from the conflicting views of the parties regarding corporate criminal liability. It is well established that, in order to find a corporation criminally liable for the illegal acts of one of its officers or agents, it is essential that the illegal conduct be related to and done within the course of employment and have some connection with the furtherance of the business of the corporation. *United States v. Carter*, 311 F.2d 934, 942 (6th Cir.1963), cert. denied *Felice v. United States*, 373 U.S. 915, 83 S.Ct. 1301, 10 L.Ed.2d 415 (1963). Put in other words, it is essential that the officer or agent intended, at least in part, to benefit the corporation through her illegal conduct. *United States v. Gold*, 743 F.2d 800, 823 (11th Cir.1984), cert. denied 469 U.S. 1217, 105 S.Ct. 1196, 84 L.Ed.2d 341 (1985); *United States v. Demauro*, 581 F.2d 50, 54 (2d Cir.1978). In such circumstances, proof of actual benefit received or retained by the corporation is not essential to establishing its criminal liability. *Carter, supra.*

■ However, this does not mean, as the government essentially contends, that evidence of actual benefit or the absence thereof is of no consequence in the determination of a corporation's guilt or innocence. Rather, proof of actual benefit or the absence thereof is of significant evidential value in determining whether or not the corporate officer or agent actually intended to benefit the corporation through her illegal conduct. *Standard Oil Co. of Texas v. United States*, 307 F.2d 120, 128 (5th Cir. 1962).

This is particularly true in the present case. The indictment alleges that Barbara Halpin, a K & N officer, brought between one-and-one-half to two million dollars into the corporation through her fraudulent

schemes. The indictment further alleges that Halpin then diverted only an unspecified portion of this money to her personal possession, or to that of her accomplices. Pursuant to a plea bargaining agreement, co-defendant Halpin has pleaded guilty to a reduced number of charges. As part of this agreement, Halpin has agreed to a number of "facts": 1) that between one-and-one-half to two million dollars were taken in through the course of her mail fraud scheme; 2) that only part of this money was diverted to her personal possession, or to that of her accomplices; 3) that she was acting in part with the intent to benefit K & N through her scheme.

In view of the above, it is apparent that the government intends to introduce evidence of actual benefit received and retained by K & N in support of its allegation that Halpin intended to benefit the corporation through her illegal activities; it can also be anticipated that Halpin will be called upon to testify as to her intent in this regard. In order for K & N to effectively rebut this allegation, it must have access to any and all evidence in the possession of the government of Halpin's siphoning of money from K & N accounts—whether directly to her own bank accounts, or through payments of phony bills to her accomplices, or through payment of personal expenses with K & N money, etc. If the cumulative result of all these various transactions shows that Halpin eventually diverted all of or more than the amounts brought into the corporation through her illegal activities—as defendant contends—this would be significant evidence that could substantially negate an essential element of the crimes alleged against the defendant. Such evidence is thus material to the question of her intent to benefit the corporation, material to the question of K & N's guilt, and thus material and subject to disclosure under *Brady*.

Discovery of the requested documents is likewise dictated by Fed.R.Crim.P. 16(a)(1)(C), which reads:

Upon request of the defendant the government shall permit the defendant to inspect and copy or photograph books, papers, documents, photographs, tangible objects, buildings or places, or copies or portions thereof, which are within the possession, custody or control of the government, and which are material to the preparation of the defendant's defense or are intended for use by the government as evidence in chief at trial, or were obtained from or belong to the defendant.

In the context of the above rule, evidence that is "material to the preparation of the defendant's defense" has been broadly construed to allow discovery of documents for which "there is a strong indication that they will play an important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment and rebuttal". *United States v. Gaddis,* 877 F.2d 605, 611 (7th Cir.1989); *United States v. Secord,* 726 F.Supp. 845, 846 (D.C.D.C.1989); both cases citing *United States v. Felt,* 491 F.Supp. 179, 186 (D.C.D.C.1979).

■ Clearly, the documents specified in defendant's request are material to the preparation of its defense, and are thus subject to discovery under Fed.R.Crim.P. 16(a)(1)(C), as well as under *Brady*. Furthermore, it appears that the requested documents might also include cancelled checks and other related documents or records that are the property of the defendant, but which are now in the government's possession. Any such documents are also subject to discovery under the rule, regardless of whether or not they are material to the defense or intended for use at trial.

The court therefore orders discovery of the requested documents to the defendant. The court does not see the need for an *in camera* review of these materials at this time; therefore this request is denied.

## IV

■ In an earlier ruling, the court granted defendant's request for an order of disclosure of the identities of witnesses whom the government interviewed during the course of its investigation but whom the government does not intend to call upon to

testify at trial, while denying defendant's accompanying request for statements made by such witnesses. In so ruling, the court relied upon *United States v. Cadet,* 727 F.2d 1453, 1468–69 (9th Cir.1984).

Although the government acknowledges that such an order is within the court's sound discretion, the government admits that it has not complied with this order. Rather, it professes to comply with the order only insofar as it relates to *eye* witnesses to the crimes alleged, asserting that this is what is "indicated in" *Cadet.* The government then advises the court and the defendant that it is not aware of any witnesses that fall within such category. In so doing, the government clearly misconstrues the language of *Cadet:*

> The government contends that "the identity of non-witnesses is not discoverable absent [a] showing of materiality." Appellants did not request the identity of *nonwitnesses.* They sought the names and addresses of *witnesses* to the "actions" or "offenses" charged in the indictment. A person who has actually witnessed a crime *through any of his senses* [emphasis added] can either provide evidence which is favorable to the defense or which may tend to raise a reasonable possibility that the accused is guilty. Thus, it was quite appropriate for the district court to conclude from the fact that the government did not intend to call a witness to the crime that there was a reasonable possibility that such person would be able to provide evidence favorable to the defense. No further showing of materiality was required. The government offered no evidence to rebut this logical inference. No legitimate governmental interest has been suggested which would justify denying to the accused the identity of a witness to a crime whose testimony may be exculpatory. "Witnesses, particularly eye witnesses, to a crime are the property of neither the prosecution nor the defense. Both sides have an equal right, and should have an equal opportunity, to interview them." *Gregory v. United States,* 369 F.2d 185, 188 (D.C.Cir.1966). Thus, the district court's order compel-

ling disclosure of the names and addresses of such witnesses did not constitute an abuse of discretion.

*Cadet, supra,* at 1469 (emphasis *sic,* except where noted). In view of the particular circumstances evident in the present case, and in view of the government's narrow stance regarding exculpatory evidence, such an order of disclosure is necessary to ensure a fair trial for the defendant. While there may be no eyewitnesses to the specific mail fraud crimes alleged against Halpin in the indictment, this does not mean that there are not witnesses, even eyewitnesses, to Halpin's related criminal "actions" of diverting K & N funds for her own purposes. As established earlier, all such evidence would be potentially exculpatory, and central to the question of Halpin's intent and, ultimately, the corporation's guilt or innocence. No more specific or compelling need for such disclosure need be demonstrated.

The defendant has brought to the court's attention that it has managed to uncover one such witness, Mr. Randy Finley, an auto mechanic. Mr. Finley relates by affidavit his personal knowledge of several occasions where Halpin paid for repair work on her automobile with K & N checks, totalling over twelve thousand dollars. There is some indication in his affidavit that these transactions may have involved deliberate overpayments and subsequent kickbacks. While Mr. Finley was interviewed by government investigators, he has not been subpoenaed by the government to testify at trial.

What the court finds particularly disturbing is that the identity of this witness was not disclosed to the defendant pursuant to this court's order, nor was the evidence that he has to offer disclosed pursuant to *Brady.* Apparently, the government believes that disclosure of such a witness's identity is not required as he was not an "eyewitness" according to its own construction of the court's order, and that disclosure of the evidence that Mr. Finley has to offer is not required by *Brady* as it is not exculpatory under its own view of

corporate liability. The government is wrong on both counts.

Lastly, the government's ostensible reason for withholding the identities of persons interviewed who will not be testifying—to protect them from reprisal by the defendant—fails to persuade. The court finds it difficult to discern any reason or purpose for reprisal by K & N against a person, whether an employee or otherwise, who will not be testifying against it at trial, and who may on the other hand have useful evidence in its favor. Furthermore, we see no power of reprisal on the part of K & N against such persons who are not its own employees, such as Mr. Finley.

The court therefore reiterates its previous order of disclosure of all names and addresses of persons interviewed by the government during the course of its investigation whom the government does not intend to call upon to testify at trial.

IT IS SO ORDERED.